ALGEIER WOODRUFF, P.C.
60 Washington Street
Morristown, NJ 07960
(973) 539-2600
Attorneys for Plaintiff, Keith Hinton

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEITH HINTON,<br><br>                  Plaintiff,<br><br>    v.<br><br>THE CITY OF EAST ORANGE, EAST ORANGE POLICE DEPARTMENT, CHARLES GRIMES, individually and in his capacity as Chief of Police, LT. PAUL DAVIS, individually and in his capacity as an Officer with the East Orange Police Department, TONY JEST, individually and in his official capacity as an Officer with the East Orange Police Department, SHARON MOSEBY, individually and in her capacity as an Officer with the East Orange Police Department, LUCAS PHILLIPS, individually and in his capacity as former counsel for the City of East Orange, MICHAEL PYCZKO, individually and in his capacity as a Lieutenant with the East Orange Police Department, MICHAEL CLEARY, individually and in his capacity as acting Chief of Police with the East Orange Police Department,<br><br>                  Defendants. | Civil Action No.:  04-4858 (KSH)<br><br><br>**THIRD AMENDED COMPLAINT<br>AND JURY DEMAND** |

## <u>PARTIES</u>

1.     Plaintiff, Keith Hinton is a citizen of the United States residing at 52 Sawyer Avenue,

East Orange, New Jersey.

2.     The City of East Orange is a municipal corporation within the State of New Jersey and as

such, is authorized to administer, fund, supervise and oversee the East Orange Police

Department.

3.      The East Orange Police Department is a part of the body politic of the City of East

Orange and charged to protect and serve the people of its city.

4.      Defendant, Charles Grimes is the Chief of Police of East Orange, NJ.  He is sued

individually and in his official capacity.

5.      Defendant, Paul Davis is a Lieutenant in the East Orange Police Department.  He

is sued individually and in his official capacity.

6.      Defendant, Tony Jest is a Police Officer in the East Orange Police Department.  He is

sued individually and in his official capacity.

7.      Defendant, Sharon Moseby is a Police Officer in the East Orange Police Department.

She is sued individually and in her official capacity.

8.      Defendant, Lucas Phillips, former Corporate Counsel for the City of East Orange, New

Jersey.  He is sued individually and in his official capacity.

9.      Defendant, Michael Pyczko is a Lieutenant in the East Orange Police Department.  He is

sued individually and in his official capacity.

10.     Defendant, Michael Cleary is the acting Chief of Police at the East Orange Police

Department.  He is sued individually and in his official capacity.

## **JURISDICTION**

This action is brought pursuant to 42 U.S.C.A. Sections 1983 et seq. and the First,

Fourth and Fourteenth Amendments to the United States Constitution, The Constitution of the

State of New Jersey and various claims under New Jersey Law.  Jurisdiction is founded on 28

U.S.C.A. Section 1331 and Sections 1343 and the supplemental jurisdiction of this Court to consider claims arising under State law.

## **FACTS**

1.      In late 2001, plaintiff and Harvey Rison, both of whom were Sergeants, were tied for the twenty second slot on the East Orange Police Department's Lieutenant's eligibility list.  The promotions were on the third cycle of the Lieutenant's list.

2.      Defendant Davis advised plaintiff that he was listed above Rison on the eligibility list and advised plaintiff that if he wanted to receive his advancement, he had to "get with the plan." Plaintiff understood this to mean that merit was not going to be the determining factor.  He believed he was going to have to pay someone to secure the position.

3.      Defendant Davis advised plaintiff to "get on the right team" and to talk to Rison if he wanted to get promoted.

4.      Thereafter, plaintiff spoke with Rison and was told that he should get in touch with his political contacts.

5.      Plaintiff in fact did not make any payments to anyone.  Shortly thereafter, plaintiff learned that the promotion list included each eligible individual except him.  All received their promotions.

6.      Thereafter, plaintiff spoke with City Councilman Zachary Turner, informed him of his discussions with Davis and Rison, and advised of how he would not provide payment and was skipped over.

7.      Following the promotions, plaintiff spoke with Rison who advised him that plaintiff was not promoted because he did not pay the proper City Officials.

8.      Plaintiff also complained to an investigator in the Prosecutor's Office of the fact that he was asked to pay for his promotion.  He was told that they did not want to hear about same and no investigation was conducted by the Essex County Prosecutor's Office.

9.      Plaintiff questioned his supervisors, in particular, defendant Grimes as to why he was not promoted.  He was told that he had more "sustainable charges" on his record than did Rison.  This was false and Grimes knew such.  This was done to deny plaintiff his rightful promotion because he would not pay for same.

10.     Defendant Davis, through his office position as head of Internal Affairs, did supply to the Police Commissioners a Certification indicating that Rison had no "sustainable charges".  This was false and Davis knew such.  This was done to deny plaintiff his rightful promotion because he would not pay for same.

11.     In November, 2002, Lt. Frank Cocchi was going to retire six months early thus opening a spot for plaintiff.  Defendant Grimes advised Cocchi that his early retirement would not benefit plaintiff because he was not going to be appointed.

12.     Thereafter, Corporate Counsel Lucas Phillips informed the Board of Police Commissioner that they were not promoting anyone at that time.  One month later, they promoted five Lieutenants.  Plaintiff was not one of them.

13.     Plaintiff was told by Defendant Lucas Phillips that he did not get the job promotion because he had a sustainable disciplinary history while in fact Rison had several more such charges.  Phillips knew this and was perpetuating same to deny plaintiff his rightful position because he would not pay for same.

14.     Thereafter, plaintiff learned that in fact Rison had significant disciplinary charges in his record.  He also learned that defendant Davis had purged Rison's file.  This was done to give Rison an advantage over plaintiff who refused to participate in any payment for promotions.

15.     In early 2004, Officer Norman Price was suspended from the East Orange Police Department as a result of having been indicted by the Essex County Prosecutor's Office.

16.     It was known in the Police Department that plaintiff was a friend of Price and was supporting him.

17.     In the Spring of 2004, plaintiff was called into Internal Affairs where defendants, Moseby and Jest were present with defendant Davis.  Plaintiff's Union Representative was also present.

18.     Once in the meeting, plaintiff was confronted as to his knowledge of a document going around headquarters which referred to defendant Davis having taken part in improper or illegal activities.

19.     Defendant Davis had been an active participant in the prosecution of Norman Price and he knew of plaintiff's friendship with Price and suspected Price of authoring the document which was critical of Davis.

20.     At the meeting, Davis advised plaintiff that he was authorized by the County Prosecutor's Office to grant him immunity as regards any information he could provide. Plaintiff was unaware of any criminal activities and did not know where defendant was going with his questioning.  Davis appeared to be seeking information regarding Norman Price and was angry that plaintiff would not help him gain information on Price.  He, Jest and Moseby attempted to intimidate plaintiff with threats of prosecution.

21.     Davis had become aware that in fact it was being claimed that he was the one responsible for purging Rison's file and he knew that plaintiff had taken his own steps to determine that in fact Rison did have a significant number of disciplinary charges.  This, threatened to expose Davis' illegal and improper actions.

22.     Davis questioned plaintiff as to how he got the file and plaintiff advised that he had utilized the services of an investigator who located copies in Trenton.  Plaintiff was required to give Davis a written statement about same but was denied a copy of this statement.

23.     Immediately thereafter, Davis called plaintiff into his own office and began to go off on Norman Price.  He indicated that Price would not be in the position he was (indicted) if he would have given Davis some money.

24.     Throughout plaintiff's employment and since late 2001, East Orange Officials, including members of the City Council and members of the Police Commission both of which were authorized entities within the City of East Orange body politic, were aware of officers complaining that they could not gain advancement unless they paid monies for same.

25.     At no time did the City of East Orange or any one at their command conduct any investigations into such claims so as to determine whether such illegal practices were ongoing.

26.     Such failure to investigate, much less take any action, was indicative of a public body that accepted such conduct as status quo and adopted such illegal conduct as the policy of the City of East Orange.

27.     Further, such failure to investigate did signal to employees that the City of East Orange would accede to and otherwise accept as their policy and procedures that advancement through the East Orange Police Department was reliant upon the payment of monies to East Orange Officials and/or other members of the East Orange Police Department.

28.     Davis made it clear to plaintiff that he should avoid an association with Price or face consequences both on the job and through possible prosecution.

29.     In June, 2004 Moseby and Jest questioned a young woman who claimed she had been sexually assaulted by several members of the police department.  During the questioning, Moseby, Jest and Davis questioned her about her friendship with plaintiff and tried to coerce her into implicating plaintiff.  The victim was angry at this and repeatedly advised that the plaintiff was not one of those who assaulted her.

30.     The victim named several officers involved in sexually assaulting her including the Chief of Police, Defendant Grimes.

31.     The victim's claims were then sent to the Essex County Prosecutor's Office however Defendant Grimes' name was omitted.  The Essex County Prosecutor's Office declined prosecution.

32.     Moseby, Jest and Davis did conspire to intimidate the victim to falsely accuse plaintiff of

committing a crime.  This was also done to coerce plaintiff into not fulfilling his obligation as an officer to see to it that the victim's claims were investigated.

33.     On an earlier occasion (2001), plaintiff had given Internal Affairs a statement indicating who and what he saw in regards to this woman and the officers involved in various incidents.  During this time period, another officer had also given a statement about the same events.  No investigation about such conduct was conducted by Davis or his office.

34.     Davis and Grimes had this information and did not act upon same.  Plaintiff, by bringing forward this information regarding potentially unlawful activity was doing his job as a law enforcement officer.

35.    There was no follow-up to the above statement, plaintiff was never asked about it again and was shortly thereafter assigned to Day Patrol.  This reassignment was perceived as a demotion and intended to intimidate plaintiff.

36.    Defendant Grimes, changing plaintiff's assignment at that time in 2001, intended to intimidate plaintiff into not doing his job and it was a message for him to ignore the illegal activity.

37.    During the year 2002, plaintiff and his brother purchased a home in East Orange and shortly thereafter was advised by Tracy Hackett, Corporate Counsel for East Orange, via a notice, that the City was attempting to repossess  the property for failure to make certain structural improvements.  The Complaints made were without basis and intended to delay plaintiff's ability to get a Certificate of Occupancy thereby allowing for the City to take the house back within a short time.

38.    Plaintiff took this matter to Councilman Turner who advised that this was being done to a lot of homeowners in the area because new construction was to commence in late 2004 which would greatly increase the value of the homes.  Those who had possession at the time could benefit.  Plaintiff took this to mean that those in the City government would benefit by repossessing the homes and buying them or having their friends purchase them.  At that time, Turner advised that Lucas Phillips was taking money to promote officers in the Police Department.  This corroborated with everything the plaintiff had gone through in 2001.

39.    Thereafter in a separate conversation with Rison, plaintiff was told that in fact Davis

had removed vital records (charges) from Rison's personnel file prior to the review of his file by the Board of Police Commissioner. This was done so that Rison would be promoted over plaintiff.

40.     Since the indictment of Norman Price and following plaintiff's discussions with Davis referenced herein, plaintiff has been subjected to harassment on the job from superiors. Further, plaintiff has been assigned to the Dispatch Room under the supervision of Deputy Chief Antonovich who has been told, through written directive from the Chief of Police, to be aware of plaintiff's whereabouts all day, everyday and to submit a written report to the Chief as regards same.

41.     Said retaliation is a result of actions taken by plaintiff to determine the improper activities of defendant Grimes and Davis and other East Orange Officers and employees named herein. It is further taken to intimidate plaintiff not to assist Norman Price in the defense of criminal charges and not to testify on his behalf and also to intimidate plaintiff into not associating with Norman Price.

42.     In May 2004, defendant Davis confronted plaintiff near the desk area of Police Headquarters and in front of a witness, told plaintiff that if he did not want to speak with him about matters concerning Price, that he would take him down to the Prosecutor's Office, strap him in a chair and make him tell him what he wanted to know.

43.     In September, 2004 the aforenoted, Norman Price filed a Civil Action against The City of East Orange and some of the defendants named herein.

44.     After the Complaint was filed, defendant Davis commenced a pattern of harassment against plaintiff on the job at the East Orange Police Department and as regards his secondary employment. This harassment continued by plaintiff's direct Supervisor, Defendant Pyczko.

45.     During the year 2005 defendant Michael Pyczko was a direct supervisor of plaintiff.

46.     As plaintiff's supervisor defendant, Pyczko did conduct a pattern of harassment at work directed at plaintiff.  Said harassment did continually go beyond what would be normally expected to occur between a Sergeant and his supervising Lieutenant.

47.     Said harassment was directed at plaintiff due to the fact that he had filed a lawsuit against the City of Each Orange as well as individually named officers.  Also, plaintiff was known to support former Officer Norman Price who also brought an action against the City of East Orange.

48.     Said harassment was intended to stifle plaintiff's First Amendment Rights of free Speech and Association.

49.     Said harassment as practiced by defendant Michael Pyczko was done under the supervision and or instruction and authorization of defendant Cleary, who as Acting Chief of Police did continue this policy as introduced by defendant, Grimes and did continue this intimidation and harassment intending to retaliate against plaintiff for his Constitutionally Protected Rights of Free Speech and Association.

50.     Said action is a continuing attempt to harass plaintiff due to his association with Norman Price and reflects the concern of Davis and others that plaintiff may testify by or on behalf of Mr. Price or otherwise continue to associate with him.

51.     As a result of the retaliatory actions as taken by all of those defendants as noted above, plaintiff Keith Hinton was forced to submit for early retirement for his employment with the City of East Orange Police Department.  Said actions of defendants individually and collectively did place the plaintiff in such a work environment, that he could not continue and such actions of

tantamount to "constructively terminating" plaintiff in that absent such retaliatory conduct he would not have left his employ.

52.     As a result of being constructively terminated, plaintiff did give up the financial benefits associated with his continuing employment with the City of East Orange including advancement, raises and pension monies and other benefits which he otherwise could have received if lawfully allowed to remain on the job and lawfully allowed to advance absent the need to pay for such advancement.

53.     Also, plaintiff has requested, pursuant to N.J.S.A. 11A:6-14 to be granted a leave of absence without pay in order to seek elective office in the City of East Orange.  Said request has without basis been rejected by representatives of the City of East Orange and the East Orange Police Department.

54.     Denial of plaintiff's request is based upon the previously set forth actions taken by defendants, all of which are protected by the laws of the United States and the laws of the State of New Jersey.

## FIRST COUNT

1.     Plaintiff repeats and reasserts all of the aforenoted facts as if set forth at length herein.

2.     Defendant, City of East Orange and East Orange Police Department through its agents and policy makers, to wit; defendant Phillips, Grimes and Davis respectively did engage in improper and illegal activities in requiring East Orange Police Officers to pay monies to City Officials or employees in order to secure promotions to which they would otherwise be lawfully entitled.

3.     Plaintiff, Keith Hinton did refuse to participate in the payment of such monies to secure

his promotion to which he was otherwise entitled.

4.      The aforenoted defendants had conspired with one another to deny plaintiff his lawful

right to be promoted and did so as retaliation for plaintiff's refusal to engage in illegal conduct.

5.      In addition, the actions or failure to act by Town Officials including Council Members

and Police Commissioners did further the conspiracy to deny the rights of plaintiff and others

similarly situated who would not pay for advancement.

6.      Such action is in violation of the Public Policy of the State of New Jersey.

7.      As a direct and proximate result of defendants actions, plaintiff was denied his

proper promotion together with the salary and benefits associated therewith.

## SECOND COUNT

1.      Plaintiff repeats the above allegations as if set forth as length herein.

2.      The City of East Orange, The East Orange Police Department through its agents and

police makers to wit, defendant Phillips, Grimes and Davis respectively did conspire to and/or in

fact did further cause plaintiff to be denied his rightful advancement through promotion due to

the fact that plaintiff disclosed to East Orange officials that in fact there were patterns and

practices of illegal conduct and/or violation of a law, rule or regulation promulgated pursuant to

law.  Further, plaintiff had refused to participate in such activity believing same to be fraudulent

or a crime and was in violation of the law, and he did advise officials and agents of the City of

East Orange and was retaliated against, all of which is contrary to the provision of the *New

Jersey Conscientious Employee Protection Act (CEPA) N.J.S.A. 34:19-1 et seq.*

3.      As a direct and proximate result of said Defendant's actions, plaintiff was denied his

proper promotion together with the salary and benefits associated therewith.

## THIRD COUNT

1.      Plaintiff repeats the above allegations as if set forth at length herein.

2.      Defendant, Grimes, Davis, Jest and Moseby did conspire to intimidate plaintiff so as to violate his Civil Rights pursuant to *42 U.S.C. Section 1983 et. seq.* and as guaranteed by the Constitutions of the United States and the State of New Jersey.

3.      Further, said defendants did in fact take such actions as to retaliate against plaintiff by taking such steps as to impact on plaintiff's employment as noted herein and also by threatening plaintiff with criminal prosecution should he be deemed to associate, assist and/or support Norman Price.

4.      Defendant's actions were a violation of *42 U.S.C. Section 1983 et seq.* and of the First and Fourteenth Amendments to the United States Constitution and also such relevant provisions of the Constitution of the State of New Jersey.

## FOURTH COUNT

1.      Plaintiff repeat the above allegations as if set forth at length herein.

2.      Defendants conduct, individually and collectively was intended to inflect emotional distress upon plaintiff and in fact did cause such emotional distress.

3.      Said conduct as set forth herein was intentionally committed, was so extreme and outrageous and did proximately cause the type of emotional distress which only could be felt when one's right of employment is jeopardized as well as his right to be free from unwarranted prosecution or threat of prosecution due to association.

## FIFTH COUNT

1.      Plaintiff repeat the above allegations as if set forth at length herein.

2.      Defendant, Pyczko's conduct in continually harassing plaintiff while on the job was a

violation of 42 U.S.C. § 1983 et seq. and of the First and Fourteenth Amendments to the United

States Constitution and also such relevant provisions of the Constitution of the State of New

Jersey.

## SIXTH COUNT

1.      Plaintiff repeat the above allegations as if set forth at length herein.

2.      The City of East Orange and the East Orange Police Department, through their agents

actions in denying plaintiff the opportunity to take a leave of absence without pay to run for

elective office, was a violation of 42 U.S.C. § 1983 et seq. and the First and Fourteenth

Amendments to the United States Constitution and also such relevant provisions of the

Constitution of the State of New Jersey.

3.      Said actions as set forth in this Complaint, are retaliation in nature for the reasons set

forth above.

## SEVENTH COUNT

1.      Plaintiff repeats the above allegations as if set forth as length herein.

2.      The action of specifically enumerated defendants in retaliatory against plaintiff at his

place of employment is a direct violation of public policy of the State of New Jersey to allow

employees to be free from retaliatory workplace action when they exercise their constitutionally

protected rights.

3.      Further, such retaliatory actions are in violation of the New Jersey Law Against

Discrimination N.J.S.A. 10:5-1 et seq.

        WHEREFORE, Plaintiff demands judgment as against all Defendants, jointly and

severally or in the alternative, for the following damages:

        A.      Compensatory;
        B.      Punitive;

C.     Attorney fees pursuant to <u>N.J.S.A. 34:19-l et seq.</u>;
D.     Attorneys fees pursuant to 42 U.S.C. Section 1988; and
E.     Such other relief as the Court may deem appropriate.




**<u>JURY DEMAND</u>**


Plaintiff demands a trial by jury on all issues of the within Complaint.



By:     <u>S/ROBERT B. WOODRUFF, (RW0245)</u>
        ALGEIER WOODRUFF, P.C.
        60 Washington Street
        Morristown, New Jersey  07960
        (973) 539-2600
        Fax #:  (973) 984-0430
        (robertwoodruff@atwlaw.com)

        Attorneys for Plaintiff
        Keith Hinton


Dated:  August 16, 2005